**SIGNED this 9th day of January, 2012**

_____
John C. Cook
UNITED STATES BANKRUPTCY JUDGE

_____

**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE EASTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | **Joint Admin. Ch. 11 Case** |
| **Quebecor World (USA)**, *et. al.* | ) | **No. 08-10152-JMP** |
| | ) | **(Bankr. S.D.N.Y.)** |
| **Debtors** | ) | |
| | ) | |
| **Eugene I. Davis, Litigation Trustee** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | **Adv. No. 11-1009** |
| | ) | |
| **Barcom, Inc.** | ) | |
| | ) | |
| **Defendant** | ) | |

**M E M O R A N D U M**

    This adversary proceeding is before the court on the plaintiff's motion for summary judgment on his complaint seeking the avoidance and recovery of alleged preferential transfers made to the defendant, Barcom, Inc., totaling $10,855.64. Having reviewed the motions, briefs, affidavit, and other related filings, the court will grant the plaintiff's motion.

**I.**

The record reveals the following undisputed material facts. The debtors filed chapter 11 bankruptcy petitions on January 21, 2008, in the United States Bankruptcy Court for the Southern District of New York, and on January 24, 2008, the bankruptcy court issued an order granting joint administration of the bankruptcy cases.[1] On July 2, 2009, the bankruptcy court confirmed a chapter 11 plan that established the Quebecor World Litigation Trust. Certain causes of action belonging to the debtors' estates, including the preference causes of action that are the subjects of this adversary proceeding, were transferred to the trust for prosecution and liquidation. The plaintiff in this proceeding is the representative of the Quebecor World Litigation Trust and it is in this capacity that the plaintiff initiated this adversary proceeding on January 15, 2010. Thereafter, the defendant filed a motion to dismiss, arguing that venue of this proceeding was improper under 28 U.S.C. §1409(b). The plaintiff conceded that venue was improper but he sought a transfer of the proceeding

---

[1] The debtors are the following entities: Quebecor World (USA) Inc.; Quebecor Printing Holding Company; Quebecor World Capital Corporation; Quebecor World Capital II GP; Quebecor World Capital II LLC; WCZ, LLC; Quebecor World Lease GP; Quebecor World Lease LLC; QW Memphis Corp.; The Webb Company; Quebecor World Printing (USA) Corp.; Quebecor World Loveland Inc.; Quebecor World Systems Inc.; Quebecor World San Jose Inc.; Quebecor World Buffalo Inc.; Quebecor World Johnson & Hardin Co.; Quebecor World Northeast Graphics Inc.; Quebecor World UP Graphics Inc.; Quebecor World Great Western Publishing Inc.; Quebecor World DB Acquisition Corp.; WCP-D, INC.; Quebecor World Taconic Holdings Inc.; Quebecor World Retail Printing Corporation; Quebecor World Arcata Corp.; Quebecor World Nevada Inc.; Quebecor World Atglen Inc.; Quebecor World Krueger Acquisition Corp.; Quebecor World Book Services LLC; Quebecor World Dubuque Inc.; Quebecor World Pendell Inc.; Quebecor World Fairfield Inc.; QW New York Corp.; Quebecor World Dallas II Inc.; Quebecor World Nevada II LLC; Quebecor World Dallas, L.P.; Quebecor World Mt. Morris II LLC; Quebecor World Petty Printing Inc.; Quebecor World Hazleton Inc.; Quebecor World Olive Branch Inc.; Quebecor World Dittler Brothers Inc.; Quebecor World Atlanta II LLC; Quebecor World RAI Inc.; Quebecor World KRI Inc.; Quebecor World Century Graphics Corporation; Quebecor World Waukee Inc.; Quebecor World Logistics Inc.; Quebecor World Mid-South Press Corporation; Quebecor Printing Aviation Inc.; Quebecor World Eusey Press Inc.; Quebecor World Infiniti Graphics Inc.; Quebecor World Magna Graphic Inc.; Quebecor World Lincoln Inc; and Quebecor World Memphis LLC.

to this court pursuant to 28 U.S.C. § 1412. On February 8, 2011, the adversary proceeding was transferred to this court pursuant to a stipulation of the parties.

On November 22, 2011, the plaintiff filed his motion for summary judgment along with a statement of facts and supporting affidavit and exhibits. On December 15, 2011, the defendant filed a response to the statement of facts and, on December 16, 2011, the defendant filed its brief in opposition to the motion for summary judgment.

Certain of the debtors purchased certain goods and/or services from the defendant, the defendant issued invoices for the goods and/or services, and the debtors paid the invoices.[2] All of the invoices required payment within 60 days. During the "preference period" from October 23, 2007, to January 21, 2008, the debtors made four separate payments to the defendant, totaling $10,855.64.[3] These payments were in satisfaction of two invoices issued by the defendant on July 30, 2007, one invoice issued on September 27, 2007, and one invoice issued on October 9, 2007. The payments in the form of checks were received by the defendant 91, 93, 107, and 109 days after invoice. The payments were to or for the benefit of a creditor and for or on account of antecedent debts owed by one or more of the debtors before the payments were made. Because unsecured creditors will not receive a 100% dividend in the debtors' chapter 11 cases and because the debtors' debts to the defendant are unsecured, the payments enabled the defendant to receive more than it would receive in a chapter 7 case had the payments not been made. As the defendant has made no

---

[2] It is not clear from the record precisely which debtors made the purchases on account of which the payments in issue in this adversary proceeding were made. The record does indicate that all four payments were made from an account at Bank of American maintained under the name Quebecor World (USA) Inc.

[3] The payments were made by check, and the checks were received by the defendant within the preference period and also cleared the debtors' bank account during that period.

attempt to rebut the presumption of insolvency, 11 U.S.C. § 547(f), the court will presume that the debtors were insolvent at the times the payments were made.

On May 4, 2006, approximately seventeen months prior to the "preference period," the defendant issued four invoices to certain of the debtors in the amounts of $6,557.76, $1,345.04, $1,625.64, and $2,782.08. Those invoices were paid by a single check in the amount of $12,310.52 that was issued on July 6, 2006, received by the defendant six or seven days later, and cleared the debtors' bank account the day after that. Thus, payment was received no more than 70 days after invoice and approximately fifteen months prior to the "preference period." The debtors did not make any other payments to the defendant until the payments made during the "preference period."

**II.**

A party is entitled to summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(c)(2). When deciding a motion for summary judgment, the court will construe all reasonable inferences in favor of the non-moving party. *Waeschle v. Dragovic*, 576 F.3d 539, 543 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Where the evidence would permit a reasonable jury to return a verdict for the non-moving party, a genuine issue of material fact exists and summary judgment must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In the face of a summary judgment motion, the nonmoving party cannot rest on its pleadings, but must come forward with some probative evidence to support its claim. *Celotex v. Catrett*, 477 U.S. 317, 324 (1986); *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (holding

that nonmoving party must present "some significant probative evidence" that would enable a jury to return a verdict for it). In the words of Fed. R. Civ. R. 56(e)(2), the opposing party "must—by affidavits or as otherwise provided in this rule —set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Likewise, "a defendant who is faced with a summary judgment motion has the same burden as a plaintiff against whom a defendant seeks summary judgment. That burden requires that the non-moving party with the burden of proof on the issue in question produce sufficient evidence upon which a jury could return a verdict favorable to the nonmoving party." *Katz v. Wells (In re Wallace's Bookstores, Inc.)*, 316 B.R. 254, 263 (Bankr. E.D. Ky. 2004) (citation omitted).

### III.

The plaintiff's statement of undisputed material facts and the defendant's response thereto establish all elements of a preferential transfer under 11 U.S.C. § 547(b). The defendant contends, however, that the "ordinary course" exception to preference avoidance prevents the avoidance of the transfers in question.

Section 547(c)(2) of the Bankruptcy Code provides:

> The trustee may not avoid under this section a transfer . . . to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was—
>
> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
>
> (B) made according to ordinary business terms.

This exception was designed to "protect recurring, customary credit transactions which are incurred and paid in the ordinary course of business of the Debtor and the transferee." *Waldschmidt v. Ranier (In re Fulghum Constr. Corp.)*, 872 F.2d 739, 743 (6th Cir. 1989).

In applying the subjective analysis set forth in Subparagraph (A) of § 547(c)(2), the Sixth Circuit Court of Appeals has held that courts must consider several factors, including the history of the parties' dealings with each other, timing, amount at issue, and the circumstances of the transaction. *Brown v. Shell Canada Ltd. (In re Tenn. Chem. Co.)*, 112 F.3d 234, 237 (6th Cir. 1997). "Late payment of a debt has been considered particularly important in determining whether the payment is ordinary." *Logan v. Basic Distrib. Corp. (In re Fred Hawes Org., Inc.)*, 957 F.2d 239, 244 (6th Cir. 1992) (citation omitted). "Whether a payment was timely is generally determined by comparing the contractual terms to the actual date of transfer. . . . To rebut this presumption of non-ordinariness, the defendant would have to offer evidence that late payments were the normal course of business between the parties." *Jahn v. Genesis Merchant Partners, LP (In re U.S. Ins. Grp., LLC)*, 451 B.R. 437, 445 (Bankr. E.D. Tenn. 2011). "Where parties have no extensive history of credit transactions to which a disputed payment can be related, their express agreement furnishes 'the most informative evidence left to consider' of the ordinariness of a transaction from the parties' perspective." *Carrier Corp. v. Buckley (In re Globe Mfg. Corp.)*, 567 F.3d 1291, (11th Cir. 2009) (citing *Fred Hawes Org.*, 957 F.2d at 245). The relevant date for determining whether a payment is late is the date of delivery of the payment, not when the payment is sent. *Official Unsecured Creditors' Comm. of Belknap, Inc. v. Shaler Corp. (In re Belknap, Inc.)*, 909 F.2d 879, 884 (6th Cir. 1990).

The invoices issued by the defendant required payment within 60 days. Since there was only one payment made to the defendant prior to the preference period, the payment satisfied four

invoices issued on the same date, and the payment was made more than 15 months before the payments that are the subjects of this proceeding, it does not appear that the parties engaged in a course of dealing that varied the invoice term. This is simply not a case in which there was a "history of late payments . . . so extensive that the [four] payments in dispute were made in the ordinary course of business." *Compare Brown v. Shell Canada Ltd. (In re Tenn. Chem. Co.)*, 112 F.3d 234, 237 (6th Cir. 1997).

Even if the court could infer from the single payment made prior to the preference period that the parties' course of dealing had the effect of varying the contractual payment term, the most that could be said is that the parties considered a payment received within 70 days after invoice to be timely. The payments sought to be avoided in this proceeding were received no less than 91 days after invoice and as much as 109 days after invoice, so the payments would not fall within any extended deadline established by a course of dealing. The payments sought to be avoided were untimely. *See Fred Hawes Org.*, 957 F.2d at 244-45; *U.S. Ins. Grp.*, 451 B.R. at 445-46; *see also Fiber Lite Corp. v. Molded Acoustical Products, Inc. (In re Molded Acoustical Products, Inc.)*, 18 F.3d 217, 225 (3d Cir. 1994). In the words of the Ninth Circuit:

> [T]he creditor must demonstrate that the relevant payments were "ordinary in relation to past practices between the debtor and [the] . . . creditor." Effectively this breaks down into two components. First, the creditor must show a baseline of past practices between itself and the debtor. Second the creditor must show that the relevant payments were "ordinary in relation to [these] past practices."

*Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)*, 504 F.3d 775, 790 (9th Cir. 2007) (citations omitted). The defendant has not carried its burden of producing sufficient evidence upon which a finder of fact could determine either a "baseline of past practices between

itself and the debtor" or that "the relevant payments were 'ordinary in relation to [these] past practices.'"

### IV.

The defendant next contends that the plaintiff lacks standing to pursue avoidance claims on behalf of the debtors' estates. Section 1123(b)(3)(b) of the Bankruptcy Code provides that a chapter 11 plan may "provide for . . . the retention and enforcement . . . by a representative of the estate appointed for such purpose, of any . . . claim or interest [belonging to the debtor or to the estate]." The defendant acknowledges that the courts, including the United States Courts of Appeals for the Fifth, Tenth, and Eleventh Circuits, have held that this provision applies in the context of avoidance actions. The defendant contends, however, that those cases were effectively overruled by the Supreme Court's decision in *Hartford Underwriters Insurance Co. v. Union Planters Bank, N.A.*,, 530 U.S. 1 (2000). To the contrary, that case held only that an administrative claimant may not seek to surcharge a secured creditor's collateral under 11 U.S.C. § 506(c), because that particular statute is to be construed to confer only on a trustee the power to surcharge collateral. The Sixth Circuit has held, on the other hand, that *Hartford v. Union Planters* does not apply to avoidance actions. *Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc. (In re Trailer Source, Inc.)*, 555 F.3d 231 (6th Cir. 2009).

### V.

Finally, the defendant takes the position that, because an avoided transfer may not be recovered unless that would be "for the benefit of the estate," 11 U.S.C. § 550, the plaintiff in this proceeding may not recover because the recovery would benefit only administrative claimants and secured creditors. Section 1123(b)(3) expressly authorizes the retention of the estate's claims and

their enforcement by a "representative of the estate appointed for such purpose." "In order for the Litigation Trust to be valid pursuant to 1123(b)(3)(B) two elements must be met: (1) the appointment of a representative of the estate under § 1123(b)(3)(B) must be approved by the Court and; (2) the trustee or entity must be a proper representative of the estate." *In re Resorts Int'l, Inc.*, 145 B.R. 412 (Bankr. D.N.J. 1990) (citing *Citicorp Acceptance Co. v. Robison (In re Sweetwater)*, 884 F.2d 1323, 1326-27 (10th Cir. 1989)).

The first element is satisfied here, because the order confirming the plan in the debtors' cases, of which the court takes judicial notice, *see* Fed. R. Evid. 201(c), provides for the creation of the Quebecor World Litigation Trust and the appointment of the plaintiff as its trustee and includes findings that the transfer of preference claims to the trust and the trust's right to enforce those claims are "appropriate and consistent with the applicable provisions of the Bankruptcy Code. (Findings of Fact, Conclusions of Law, and Order Confirming Third Amended Joint Plan of Reorganization of Quebecor World (USA) Inc. and Certain Affiliated Debtors and Debtors-in-Possession, at 41, 11 (Bankr. S.D.N.Y. July 2, 2009) [hereinafter cited as Confirmation Order].) Regarding the second element, "the primary concern is whether a successful recovery by the appointed representative would benefit the debtor's estate." *Sweetwater*, 884 F.2d at 1327 (citations omitted). "[T]he bankruptcy 'estate' is not synonymous with the concept of a pool of assets to be gathered for the sole benefit of unsecured creditors." *Stalnaker v. DLC, Ltd.*, 376 F.3d 819, 823-24 (8th Cir. 2004) (noting that attorney's and trustee's fees "also exist and are recoverable under 11 U.S.C. § 330(a)"). Rather, "'[e]state' is a statutory term that Congress uses to denote the asset side of the bankruptcy balance sheet. . . . Creditors are on the opposite side of the balance sheet." *Id.* at 823 (quoting *Stalnaker v. DLC, Ltd. (In re DLC, Ltd.)*, 295 B.R. 593, 607 (B.A.P. 8th Cir. 2003)). A recovery in this

proceeding would benefit the debtors' estates because the beneficiaries of the Quebecor World Litigation Trust are holders of certain allowed secured and unsecured claims against the debtors, as well as the plaintiff and his attorneys. (Confirmation Order, Ex. A, § I.B.114, I.B.175-76, I.B.186-87, 3.2, 6.11(e).) Accordingly, the defendant's position that § 550 is not satisfied is without merit.

## VI.

For the foregoing reasons, the court will enter a separate order and judgment granting plaintiff's motion for summary judgment.[4]

###

---

[4] The plaintiff contends that it is entitled to an award of prejudgment interest from the date of the most recent avoided transfer at the federal judgment interest rate as of that date. (Memo. of Law in Supp. of Pl.'s Mot. for Summ J. with Respect to Pl.'s Claims Against Def., Barcom, Inc., at 16-17.) While the court agrees with that prejudgment interest is to be awarded at the rate prescribed by 28 U.S.C. § 1961(a) since the plaintiff's cause of action is based on federal law, *DuVoisin v. Anderson (In re S. Indus. Banking Corp.)*, 87 B.R. 518, 523-24 (Bankr. E.D. Tenn. 1988), as the court has previously held, in the absence of proof of an earlier demand, prejudgment interest is awarded from the date the complaint was filed. *Jahn v. Genesis Merchant Partners, LP (In re U.S. Ins. Grp., LLC)*, 451 B.R. 437, 447 (Bankr. E.D. Tenn. 2011) (citing *S. Indus. Banking Corp.*, 87 B.R. at 522-23); *accord, e.g., Turner v. Davis, Gillenwater & Lynch (In re Inv. Bankers, Inc.)*, 4 F.3d 1556 (10th Cir. 1993).